DECISION AND JUDGMENT ENTRY
{¶ 1} Appellants, State of Ohio Ex Rel. Northwestern Ohio Building and Construction Trades Council and State of Ohio Ex Rel. Kevin J. Flagg, appeal from an entry of judgment by the Ottawa County Court of Common Pleas in favor of appellees, *Page 2 
Ottawa County Improvement Corporation ("OCIC"), the Board of County Commissioners for Ottawa County ("the county"), and Fellhauer Mechanical Systems, Inc. ("Fellhauer"). For the reasons that follow, we affirm the judgment of the trial court.
 {¶ 2} Appellee Fellhauer is a private company that provides plumbing, heating, and electrical services, and is a retailer of audio-visual and security systems. Fellhauer's business was located in a leased facility at 2435 Gill Road, Port Clinton, Ohio. When the opportunity arose for Fellhauer to purchase this leased facility and expand its operations, it applied for a loan under the county's Small Cities Community Development Block Grant ("CDBG") program to partially finance its acquisition of the land and building.
 {¶ 3} CDBG program monies are federal dollars, which the United States Department of Housing and Urban Development provides to the state of Ohio for community and economic development. The Ohio Department of Development ("ODOD") disburses these federal block grant funds to units of general local government in nonentitlement areas in the state, which in turn may use such funds for economic development loans.
 {¶ 4} Upon receipt of Fellhauer's CDBG loan application, Ottawa County applied to ODOD for the block grant funding. Ottawa County's grant application was approved in the amount of $305,000, and ODOD and Ottawa County executed a written grant agreement, dated December 7, 2006, setting forth the terms of the grant.
 {¶ 5} The county approved a loan to Fellhauer using these CDBG funds in the amount of $300,000, to be repaid over a term of 15 years at an interest rate of four *Page 3 
percent per annum. The grant agreement expressly states, at Attachment A, that these "CDGB funds will be used for the acquisition of the land and building." In addition, paragraph number three of the grant agreement states that "[t]he Funds shall be used solely for the stated purposes set forth in this Agreement and Attachment A."
 {¶ 6} In addition to the CDBG loan from the county, Fellhauer also applied for a revolving loan from appellee OCIC to further finance its acquisition of the building and property and to finance its acquisition of equipment. OCIC granted Fellhauer a revolving loan in the amount of $36,750, to be repaid over a five-year term at an interest rate of 4.5 percent. This OCIC revolving loan was funded solely by conveyance fees on real estate transfers within Ottawa County.
 {¶ 7} The total cost for the acquisition of real property for the project is estimated to be $500,000, which, of course, is more than the amount provided by way of the CDBG loan and OCIC revolving loan combined.
 {¶ 8} In addition to the acquisition of property, the Fellhauer project involves plans to renovate and improve that portion of the building containing Fellhauer's retail store. Attachment A of the grant agreement indicates that this portion of the project will cost approximately $135,000. The evidence is undisputed that the renovation portion of the project will be funded with private monies, not connected with either the CDBG loan or the OCIC revolving loan. *Page 4 
 {¶ 9} The total costs of the project are estimated to be $695,000, and include in addition to the costs of real property acquisition and rehabilitation, the costs of machine and equipment acquisition and general administration.
 {¶ 10} On December 14, 2006, appellants filed their verified complaint for preliminary and permanent injunctive relief and petition for temporary restraining order against appellees. By this action, appellants sought to enjoin appellees from going forward with the Fellhauer project. As grounds for the action, appellants alleged that appellees were acting in violation of the Ohio prevailing wage statute, as set forth at R.C. Chapter 4115.
 {¶ 11} On January 10, 2007, a magistrate issued a temporary restraining order "to preserve the status quo between the parties pending trial on the merits." In the same order, the magistrate held that appellants appeared able to state a claim for injunctive relief because, although the project was not a public improvement as defined by R.C. 4115.03(C), it was "deemed to be construction of a public improvement within R.C. 4115.03," by operation of R.C. 166.02, and, as such, prevailing wage law would apply thereto. Appellees timely filed objections to the magistrate's decision.
 {¶ 12} On January 24, 2007, a consolidated hearing on appellants' request for preliminary and permanent injunction was held before the trial court. In a judgment entry dated March 26, 2007, the trial court ruled that Ohio's prevailing wage law does not apply to the Fellhauer project. As grounds for this decision, the court found that: (1) R.C. 166 does not apply in this case; and (2) the Fellhauer project does not constitute a "public *Page 5 
improvement" under R.C. 4115.03(C), because it does not involve construction "by" or "for" a public authority. Accordingly, the trial court entered judgment in appellees' favor and denied appellants' request for injunctive relief. Appellants timely filed an appeal from this judgment entry, raising the following assignments of error:
 {¶ 13} I. "THE TRIAL COURT ERRED IN GRANTING JUDGMENT FOR RESPONDENTS AND DENYING JUDGMENT FOR RELATORS."
 {¶ 14} II. "THE TRIAL COURT ERRED IN REFUSING TO HOLD THAT THE OHIO PREVAILING WAGE LAW APPLIED TO THE PROJECT BY APPLICATION OF R.C.4115.03(A) BECAUSE WHERE AN INSTITUTION SUPPORTED IN PART BY PUBLIC FUNDS EXPENDS PUBLIC FUNDS, THE PREVAILING WAGE IS DEEMED APPLICABLE AS A MATTER OF LAW."
 {¶ 15} III. "THE TRIAL COURT ERRED IN REQUIRING THAT R.C. 4115.03(C) BE MET BY AN INSTITUTION SUPPORTED IN PART BY PUBLIC FUNDS BECAUSE BY ITS EXPRESS TERMS THAT SECTION ONLY APPLIES TO THE STATE AND ITS POLITICAL SUBDIVISIONS."[1]
 {¶ 16} All of the assignments of error involve the essential issue of whether the Fellhauer project is subject to Ohio prevailing wage law. Therefore, we will consider them together in this analysis. Further, because the operative facts are undisputed in this case, our review is limited to consideration of the trial court's interpretation and *Page 6 
application of the law as applied to those facts. Such review is conducted de novo. See Akron v. Frazier (2001), 142 Ohio App.3d 718,721.
 {¶ 17} Ohio's prevailing wage law, which appears at R.C. 4115.03 to4115.16, "evidences a legislative intent to provide a comprehensive, uniform framework for, inter alia, worker rights and remedies vis-à-vis private contractors, sub-contractors and materialmen engaged in the construction of public improvements in this state." State ex rel.Evans v. Moore (1982), 69 Ohio St.2d 88, 91; see, also, Internatl.Brotherhood of Electrical Workers, Local Union No. 8 v. VaughnIndustries, Inc., 156 Ohio App.3d 644, 2004-Ohio-1655, ¶ 7. The primary purpose of the prevailing wage law "is to support the integrity of the collective bargaining process by preventing the undercutting of employee wages in the private construction sector." Id.
 {¶ 18} By its terms, Ohio's prevailing wage law applies to all construction projects that qualify as "public improvements." See R.C.4115.10(A); see, also, Ohio Adm. Code 4101:9-4-02(BB) (containing an amplified definition of "public improvement"); Episcopal RetirementHomes, Inc. v. Ohio Dept. of Indus. Relations (1991), 61 Ohio St.3d 366,369; Taylor v. Douglas Co., 130 Ohio Misc.2d 4, 2004-Ohio-7348, ¶ 10. In addition, in most cases a "public authority" must be associated with the project. See R.C. 4115.03(A).
 {¶ 19} As applied to the instant case, R.C. 4115.03(A), relevantly provides:
 {¶ 20} "(A) `Public authority' means any officer, board, or commission of the state, or any political subdivision of the state, authorized to enter into a contract for the *Page 7 
construction of a public improvement or to construct the same by the direct employment of labor, or any institution supported in whole or in part by public funds and said sections apply to expenditures of such institutions made in whole or in part from public funds."
 {¶ 21} Thus, under R.C. 4115.03(A), the definition of "public authority" includes, in addition to the state, political subdivisions thereof, and other units of government, "any institution supported in whole or in part by public funds."
 {¶ 22} An "institution," within the meaning of the Ohio prevailing wage law, is "any society or corporation of a for-profit, not-for-profit, public, or private character established or organized for any charitable, educational or other beneficial purpose." Ohio Adm. Code 4101:9-4-02(P). An institution is "supported in whole or in part by public funds" if it receives "payment or partial payment directly or indirectly from funds provided by loans, grants, taxes, or any other type of payment from public funds of the federal government or of the state as defined in division level 4101:9 rules of the Administrative Code." Ohio Adm. Code 4101:9-4-02(H)(H).
 {¶ 23} The definition of "public improvement" as applied to "institutions supported in whole or in part by public funds" is set forth as follows at Ohio Adm. Code 4101:9-4-02 (BB)(1)(d):
 {¶ 24} "(B)(B) `Public improvement' means:
 {¶ 25} "(1) All buildings, roads, streets, alleys, sewers, ditches, sewage disposal plants, water works, and all other structures or works which are:
 {¶ 26} "* * * *Page 8 
 {¶ 27} "(d) Constructed in whole or in part from public funds by an institution supported in whole or in part by public funds."
 {¶ 28} Thus, pursuant to Ohio Adm. Code 4101:9-4-02 (BB)(1)(d), in order for there to be a "public improvement" by an institution supported in whole or in part by public funds, there must be: (1) some kind of construction; and (2) that construction must be paid for, in whole or in part, from public funds.
 {¶ 29} Appellant argues that the Fellhauer project involved "an expenditure of an institution supported in whole or in part by public funds (OCIC)" which "triggers the application of the prevailing wage law." To determine whether Ohio prevailing wage law applies to a project where a publicly funded institution expends public funds on construction, we must consider whether: (1) the entity in question is an "institution" as defined by Ohio Adm. Code 4101:9-4-02(P); (2) the institution is supported in whole or in part by public funds; and (3) the institution will make expenditures in whole or in part from public funds toward a construction project. If the answer to any of these questions is no, the prevailing wage law does not apply.
 {¶ 30} To determine whether Ohio prevailing wage law applies to the Fellhauer project, we begin by asking whether Fellhauer is an institution. As stated above, an institution is defined as "any society or corporation of a for-profit, not-for-profit, public, or private character established or organized for any charitable, educational or other beneficial purpose." Ohio Adm. Code 4101:9-4-02(P). Fellhauer, as a private, for-profit *Page 9 
business, which was clearly not established for any charitable, educational or other beneficial purpose, simply does not meet the definition of an institution. See id.
 {¶ 31} We note that appellants' argument, as written, is ambiguous inasmuch as it leaves unclear whether Fellhauer or OCIC is to be considered the applicable "institution" in this case. Even assuming,arguendo, OCIC is the purported institution, it fails to meet the definition of the term as set forth at Ohio Adm. Code 4101:9-4-02(P). Appellants, in their initial brief, refer to OCIC as a "charity." However, the evidence at trial clearly demonstrated that OCIC is a statutorily-defined "community improvement corporation" under R.C. Chapter 1724 and was created "for the sole purpose of advancing, encouraging, and promoting the industrial, economic, commercial, and civic development of a community or area." See R.C. 1724.01.
 {¶ 32} As appellants have failed to establish that there was an "institution" associated with the Fellhauer project, we find, on this basis alone, that prevailing wage law does not apply.
 {¶ 33} Moreover, even assuming, arguendo, the existence of an institution supported in whole or in part by public funds, there is nothing to suggest that either Fellhauer or OCIC expended public funds on construction. At trial, the evidence was uncontroverted that any monies for construction were going to come from Fellhauer's private resources, and not the CDBG loan or the OCIC revolving loan.
 {¶ 34} Appellants argue in their third assignment of error that the trial court erred in requiring that R.C. 4115.03(C) be met by an institution supported in part by public *Page 10 
funds, because by its express terms that section only applies to the state and its political subdivisions. Because R.C. 4115.03(C) deals specifically with public improvements "constructed by a public authority of the state or any political subdivision thereof or by any person who, pursuant to a contract with a public authority, constructs any structure for a public authority of the state or a political subdivision thereof," appellants are presumably correct with respect to this assignment of error. Unfortunately for appellants, their success with regard to this assignment of error does nothing to alter the result in this case.
 {¶ 35} For all of the foregoing reasons, appellants' first and second assignments of error are found not well-taken, and appellants' third assignment of error is found to be moot.
 {¶ 36} The judgment of the Ottawa County Court of Common Pleas is affirmed. Appellants are ordered to pay the costs of this appeal pursuant to App.R. 24. Judgment for the clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Ottawa County.
JUDGMENT AFFIRMED.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4. *Page 11 
William J. Skow, J., Thomas J. Osowik, J., CONCUR.
Arlene Singer, J., DISSENTS.
[1] In their reply brief, appellants withdrew a fourth assignment of error which stated: "The trial court erred in finding that Fellhauer's was not a public authority for the Project even though it was supported in part by public funds."